FRANK G. HANSSEL, Doing Business as FRANK G. HANSSEL COMPANY, Respondent, v. P. TOMASETTI CONTRACTING CORPORATION, Appellant, Impleaded with Another.

Argued April 15, 1940; decided May 28, 1940.

*Jesse L. Goldberg* and *David Epstein* for appellant. The parties have agreed that the conclusion of the engineers of the Authority is binding. (*Weston* v. *State*, 262 N. Y. 46; *Foundation Co.* v. *State*, 233 N. Y. 177; *Holdsworth* v. *Wills, Inc.*, 279 N. Y. 768; *Del Balso Constr. Corp.* v. *City*, 278 N. Y. 154; *Leary* v. *City of Watervliet*, 222 N. Y. 337; *Matter of Semper* v. *Duffy*, 227 N. Y. 151; *Peterson* v. *City of New York*, 205 N. Y. 323; *Norcross* v. *Wills*, 198 N. Y. 336; *Mechanic's Bank* v. *City of New York*, 164 App. Div. 128; *Lowry* v. *Inman*, 46 N. Y. 119; *Fortunato* v. *Patten*, 147 N. Y. 277; *Nolan* v. *Whitney,* 88 N. Y. 648; *Flaherty* v. *Miner*, 123 N. Y. 382; *O'Brien* v. *Mayor*, 139 N. Y. 543; *MacKnight Flintic Stone Co.* v. *Mayor*, 160

N. Y. 72; *Sweet* v. *Morrison,* 116 N. Y. 19.) The contract provides that there can be no charge for extra work unless agreed upon in advance. Plaintiff has failed to establish an agreement with the defendant to pay for the alleged extra work. (*Miller* v. *Schloss,* 218 N. Y. 400; *DeKlyn* v. *Gould,* 165 N. Y. 282; *Delany & Co.* v. *Duvoli,* 278 N. Y. 328; *Smith* v. *Vara,* 136 Misc. Rep. 500; *New York Tel. Co.* v. *Jamestown Tel. Corp.,* 256 App. Div. 1; *Eustathopoulo* v. *Gillespie,* 218 App. Div. 179; *Mahar* v. *Compton,* 18 App. Div. 536; *Poel* v. *Brunswick-Balke-Collender Co.,* 216 N. Y. 310; *Wittwer* v. *Hurwitz,* 216 N. Y. 264; *Howells* v. *Stroock,* 50 App. Div. 344; *Sidney Glass Works* v. *Barnes & Co.,* 86 Hun, 374; *McCotter* v. *Mayor,* 37 N. Y. 325.)

*Clayton M. Smith* for respondent. The conclusion of the engineers for the Sewer Authority is not binding upon the plaintiff. (*Uvalde Contracting Co.* v. *City of New York,* 160 App. Div. 284; *St. George Construction Co.* v. *City of New York,* 205 N. Y. 126; *Borough Construction Co.* v. *City of New York,* 200 N. Y. 149; *President, Managers & Co. D. & H. Canal Co.* v. *Pennsylvania Coal Co.,* 50 N. Y. 250; *Seward* v. *City of Rochester,* 109 N. Y. 164; *Degnon Contracting Co.* v. *City of New York,* 235 N. Y. 481; *Cauldwell-Wingate Co.* v. *State,* 276 N. Y. 365; *McGovern* v. *City of New York,* 202 App. Div. 317; 235 N. Y. 277; *Pilkington Co.* v. *City of New York,* 211 App. Div. 558; *Gearty* v. *Mayor,* 171 N. Y. 73.) The plaintiff is entitled to recover against the defendant-appellant the cost of the extra or additional labor and material on the basis of and according to the provisions of the contract made by the latter with the Sewer Authority and which had been made a part of the contract between the plaintiff and the defendant-appellant. (*Evelyn Building Corp.* v. *City of New York,* 257 N. Y. 501; *Mason Co.* v. *City of New York,* 249 App. Div. 538.) The plaintiff having performed extensive extra or additional work for which he received no payment either under the lump sum bid price or the unit prices, is entitled to payment under " Article XI — Extra work, increased

compensation " of the contract. (*Faber* v. *City of New York*, 222 N. Y. 255; *Foundation Co.* v. *State of New York*, 233 N. Y. 177; *McGovern* v. *City of New York*, 202 App. Div. 317; 235 N. Y. 275; *Walbridge-Aldinger Co.* v. *Rudd*, 26 Fed. Rep. [2d] 636.)

CONWAY, J. On May 10, 1937, P. Tomasetti Contracting Corporation (hereinafter called Tomasetti) entered into a contract with Buffalo Sewer Authority (hereinafter called Sewer Authority) for the construction of certain portions of the sewer system in the city of Buffalo. Included in the contract was division X, item X-1, covering the construction of the Cornelius creek intercepting and overflow chamber and connection. The agreed price for that portion of the work was $60,000. The contract covered other items also but with them we are not concerned on this appeal. Nor are we concerned with the cause of action of plaintiff against Sewer Authority. The trial court dismissed the complaint against the Sewer Authority and plaintiff appealed to the Appellate Division from that decision and judgment. After the affirmance by the Appellate Division, no further appeal was taken by plaintiff to this court.

The contract between Tomasetti and Sewer Authority provided, in the event that extra work was required:

" The amount of compensation to be paid to the Contractor for any extra work as so ordered shall be determined as follows:

" 1. By such applicable unit prices, if any, as are set forth in the contract, or

" 2. If no such unit prices are so set forth, then by a lump sum mutually agreed upon by the Authority, and the Contractor; or

" 3. If no such unit prices are so set forth and if the parties cannot agree upon a lump sum, then by the actual net cost in money to the Contractor of the materials and of the wages of applied labor (including premium for workmen's compensation insurance) required for such extra work, plus such rental for plant and equipment (other than small

tools) required and approved for such extra work, plus fifteen per cent (15%) as compensation, for all other items of profit and cost or expense, including administration, overhead, superintendence, insurance (other than workmen's compensation insurance), materials used in temporary structures, allowances made by the Contractor to the subcontractors, additional premium upon the performance bond of the Contractor and the use of small tools."

On June 22, 1937, Tomasetti entered into a contract with the plaintiff, Frank G. Hanssel, doing business as the Frank G. Hanssel Company (hereinafter referred to as Hanssel). By the terms of that contract Hanssel agreed to furnish the labor, equipment and material called for in doing the work in division X, item X-1, for the agreed price of $49,145. Tomasetti did not reserve to itself the doing of any work under its contract with Sewer Authority. Hanssel was to do all of it.

Tomasetti's contract with Hanssel provided:

" *Twelfth.* It is mutually agreed that the intent of this agreement is that the respective rights and obligations of the parties hereto shall, *except as otherwise provided herein,* be precisely the same as the respective rights and obligations of the contractor and the Buffalo Sewer Authority with respect to items X-1 and X-5 of Division X of the contractor's agreement with the Buffalo Sewer Authority, dated, as aforesaid, May 10, 1937." (Italics added.)

Among those matters in the contract between Tomasetti and Hanssel which were " otherwise provided herein " was extra work. As to that, the contract provided:

" *Third.* The amount to be paid to the subcontractor for items not provided in the contractor's contract with the Buffalo Sewer Authority such as subsequent items or extra work orders and for which no unit or lump sum price is provided, shall be agreed upon between the parties hereto *in advance of the work being done,* subject, however, to the approval of the Buffalo Sewer Authority, should the same be required." (Italics added.)

Hanssel was approved as subcontractor by Sewer Authority and made ready to do the work. Then an unfortunate situation developed. On July 23, 1937, Sewer Authority wrote to Tomasetti advising that it had come to its attention that there were four lines of sixty-inch pipes in the bed of Cornelius creek. Sewer Authority directed that the excavation be carried to a point sufficient to expose the pipes so that they might be examined and stated that the payment therefor would be under item X-8, " additional earth excavation." That excavation was made and paid for as stated and there is no dispute with reference thereto. Hanssel testified that he had his equipment ready about September 1st and began driving piles about September 8th. The old pipes were found to be three or more feet below the lowest point to be excavated. The increased depth necessitated the use of longer piles. Under the pipes was found timber about which Hanssel had never been told. After the pipes were exposed, plaintiff notified Sewer Authority and its engineers made an inspection about November 10th or 11th. Then followed conflicting orders from the engineers of Sewer Authority. First Hanssel was told to fill the excavation with washed crushed stone and to build bulkheads so that the stone would not slide. Then Hanssel was told to take out the crushed stone. That was at a time when Hanssel was ready to pour concrete upon it. After the removal of the crushed stone, work was suspended on the orders of the engineers of Sewer Authority and nothing was done for some days. Then Hanssel was directed to drive wooden piles between the old pipes. Upon the insistence of the engineers Hanssel ordered the piles although he told the engineers there was no room between the pipes to drive them. The engineers of Sewer Authority were depending upon a blueprint which was inaccurate. Then Hanssel was told to take out the pipes, which would necessitate breaking them up. Hanssel had been directed to purchase the washed crushed stone on November 11th and began to break up the old pipes on November 22nd. On November 18th Hanssel wrote a letter to Tomasetti. This letter

and those following determine whether or not there was any contract between Hanssel and Tomasetti for the extra work done by Hanssel on a cost plus basis and whether there is any right of recovery in this action. I shall, therefore, quote in part the correspondence.

The letter of November 18, 1937, detailed at some length the difficulties under which Hanssel had been laboring. It then continued:

" You realize that this delay has seriously hindered us from completing our contract and caused us a great additional expense.

" In view of the above, we wish to state before proceeding further with this contract, we demand that we receive from you, *officially in writing*, instructions to proceed on a definite plan with the understanding that we are to be reimbursed for all additional expense we have been put to for proceeding thus far, on the indefinite plans, plus a reasonable profit and an extension of time for every day delayed; also an extension of time for any additional work we are authorized to perform that was not shown on the original drawings or specifications.

" Due to the unusual condition we have encountered, a condition that Greeley & Hansen should have been familiar with before designing this project, as the information regarding this unusual condition has been on file in the city engineer's office for many years, we cannot give you an estimate as to what the additional cost will be, but will proceed on this additional work on a cost plus basis, plus a reasonable profit, as there is not the slightest reference in the specifications regarding this condition, and therefore is not covered under our contract. * * *

" Trusting we may hear from you without the least possible delay so we will be able to complete our contract, we remain." (Italics supplied.)

It will be noted that this letter did not seek payment for the extra work on a basis of cost plus fifteen per cent as outlined in the contract between Sewer Authority and Tomasetti. The letter was signed by Hanssel and addressed to Tomasetti.

Under date of November 18, 1937, Tomasetti wrote the following letter to the engineers of Sewer Authority:

" We are attaching herewith a copy of letter from our subcontractor Frank G. Hanssel in reference to his work at Cornelius Creek under Item X-1, Contract 20. In his letter he refers to yours of July 23rd which orders the uncovering of the 60″ cast iron pipe referred to, also furnishing and driving of sheeting for the cofferdam of sufficient length to permit the dewatering to that elevation, so you would be able to make a study of the conditions at a future date.

" As he enumerates in his letter of subsequent conditions he has encountered and his inability to proceed on some definite plan, we are taking this matter up with you so that the work may proceed and be prosecuted immediately."

On November 19th the engineers of Sewer Authority wrote the following letter to Tomasetti:

" We acknowledge receipt of your letter of November 18, 1937 enclosing copy of letter from your subcontractor, the Frank G. Hanssel Company, referring to conditions connected with construction of the Cornelius Creek Intercepting and Overflow Chamber.

" The subcontractor's letter has been carefully read, and you are advised that it contains many misstatements of fact and unwarranted conclusions.

" If, as Mr. Hanssel states, a dangerous condition exists at the outlet of the trunk sewer, it is his responsibility to provide necessary protection at once.

" A work order is about to be issued covering the necessary work to be done to provide proper foundation for this chamber."

On November 19, 1937, the engineers of Sewer Authority also wrote to Tomasetti the following which appears to be a work order:

" Under the provisions of your contract with the Buffalo Sewer Authority for the construction of the Intercepting Sewer, Division X, and in accordance with the specifications, you are hereby ordered to excavate below the subgrade of

Cornelius Creek Intercepting and Overflow chamber to depths ordered by the Engineers, to furnish and place round timber piles in designated locations and to increase the thickness of the concrete bottom of the chamber as ordered by the Engineers.

" The purpose of this work is to provide a proper foundation for this chamber.

" Measurement and payment for this work will be made under the provisions of the following items:

" Item X-8, Additional Earth Excavation

" Item X-10, Additional Concrete, Class A-2

" Item X-24, Timber Piles

" Upon completion of this work, a supplement to this work order will be issued, setting forth the quantities for which payment will be made."

On November 22, 1937, Tomasetti wrote Hanssel as follows:

" We are enclosing herewith copy of the letter from Greeley & Hansen in reply to yours of November in connection with the conditions existing at Cornelius Creek Intercepting and Overflow Chamber, in which they comment on the statement of facts and unwarranted conclusions and also the serious condition if it exists at the outlet of the sewer is your responsibility.

" Attached herewith also is a copy of Greeley & Hansen's Engineers work order #7 of which they mention that the extra work involved will be *paid for under X-8, X-10 and X-24.*

" I was speaking to Mr. Sellnow this afternoon and he informs me that they are at present making up plans showing the layout of piles and it will be forwarded as soon as we receive it."

The final letter was from Hanssel to Tomasetti, undated:

" This will acknowledge receipt of your letter of November 22nd, in which you enclose copy of letter from Greeley & Hansen, dated November 19th, 1937 signed by F. C. Sellnow, which instructs us to perform additional work in connection with this contract.

" Please be advised that we are proceeding with the additional work as directed on the basis of our letter to you of November 18th, 1937, which states that we will make an extra charge for all additional work not covered by the original drawings, specifications or contract."

It is clear from this correspondence that there was no agreement between Hanssel and Tomasetti " in advance of the work being done." There was no agreement at all. There was a proposal but no acceptance. Instead there was a rejection of the proposal. Under the terms of the contract between Hanssel and Tomasetti there had to be an agreement " in advance of the work being done."

Hanssel seeks to escape from the situation in which he finds himself by reason of the correspondence, in the following ingenious manner: Disregarding the request in his letter to Tomasetti under date of November 18, 1937, for instructions officially in writing, he calls attention only to the portion of the same sentence in which he sought instructions " to proceed on a definite plan;" then, disregarding the second paragraph in the letter from Tomasetti to him under date of November 22, 1937, he calls attention to the third paragraph of that letter in which Tomasetti wrote: " I was speaking to Mr. Sellnow this afternoon and he informs me that they are at present making up plans showing the layout of piles and it will be forwarded as soon as we receive it;" Hanssel then claims that when later the engineers of Sewer Authority delivered to him a blueprint (Exhibit 21) that that constituted the definite plan requested in his letter of November 18th and that he was thereupon authorized to go ahead on the basis of that letter. This despite his own final letter, undated, to Tomasetti in which he advised that he was proceeding with the additional work on the basis of his letter of November 18, 1937, without making any reference to a plan, definite or otherwise. The statement of the contention is a statement of its refutation.

In the complaint the eighth allegation is as follows:

" *Eighth.* That the greater portion of the extra work and extra materials necessitated by the various orders alleged

above, was of such a nature as was not provided for in the unit price provisions of the original general contract, or original subcontract, and that by reason of that fact plaintiff notified defendant, P. Tomasetti Contracting Corporation, which in turn communicated such notification to the defendant, Buffalo Sewer Authority, that plaintiff would proceed with the extra work necessitated by the aforementioned orders on a cost basis, plus a reasonable profit; that the defendants, and each of them, assented to this offer to proceed on a cost plus basis, and directed the plaintiff to proceed, and plaintiff did proceed and duly perform all the necessary extra labor and furnished all the necessary extra material and extra supplies, pursuant to such agreement, beginning on or about the 10th day of November, 1937, and completing such extra work on or about the 6th day of April, 1938."

Nowhere in the record does it appear " that the defendants, and each of them, assented to this offer to proceed on a cost plus basis * * *." Tomasetti's answer to Hanssel's proposal that he proceed on the basis of cost plus *a reasonable profit* was to transmit a copy of a work order from Sewer Authority directing plaintiff to perform the work at unit prices. Nothing further from an acceptance or assent can be imagined.

Finding No. 12 is without evidence to support it. The trial court found that plaintiff performed extra work and furnished extra materials for which Tomasetti *agreed to pay* in accordance with the contract between Sewer Authority and Tomasetti. To the contrary, the trial court found in proposed finding No. 17 of Tomasetti that Hanssel received verbal orders from the engineers of Sewer Authority to remove the iron pipes and crushed fill in the absence of and without the knowledge, consent or approval of Tomasetti. Finding No. 17 was in accordance with the evidence. Hanssel had taken over Tomasetti's contract in its entirety and received all his orders from the engineers of Sewer Authority. Tomasetti never kept a foreman or superintendent on the work and Hanssel never received a work

order from Tomasetti authorizing him to break up and remove the sixty-inch pipes. In view of finding No. 17 and the absence of evidence to support finding No. 12, the judgment may not be sustained.

This disposition of the case renders it unnecessary to pass upon the question whether the action of the engineers of Sewer Authority was arbitrary and unreasonable in insisting that, under the terms of the contract, removal of the pipes was "additional earth excavation." The engineers of Sewer Authority ruled under the power conferred upon them by article XXIII of the contract between Tomasetti and Sewer Authority that the removal and disposal of all excavated material except rock was to be paid for under Item X-8 as "additional earth excavation" and that that included pipes, since pipes were not rock.

Inasmuch as Hanssel has accepted payment at unit prices, under X-8 for the work done, under protest, there is nothing further to be litigated.

The judgments should be reversed and the complaint dismissed, with costs in all courts. (See 283 N. Y. 697.)

LEHMAN, Ch. J., LOUGHRAN and FINCH, JJ., concur; RIPPEY, J., dissents; SEARS and LEWIS, JJ., taking no part.

Judgments reversed, etc.